Good morning, Your Honor, supposing counsel, may it please the court, Allison Young representing Christine Potts. There are two issues in this case and the primary issue is whether the vocational expert testimony constituted a conflict between what he said in the Dictionary of Occupational Titles. We, of course, believe that it did. The secondary issue is whether the judge's error in failing to resolve that conflict is harmless and that goes to the number of jobs. I'd like to push that issue to the side and focus first on the vocational expert testimony because if there's no error there, then there's nothing to discuss. So in this case, the vocational expert at first testified that the job of a child attendant was consistent with the light hypothetical that the ALJ had presented. But on cross-examination, the vocational expert testified that on rare occasions, a person would have to lift over 20 pounds, in particular, might have to lift a child, for example, a child that was hurt or needed medical attention. Is that unusual? It seems to me that there are lots of jobs that might require lifting but on rare occasions. I think you're right and I agree that it's a rare circumstance. In Gutierrez, this court had said that in order to present a conflict, the circumstances must be essential, integral, or expected. And here, I think that standard is met because even though it's rare, it's essential. Well, I have to confess, the dictionary definition of the position, child attendant, kind of Admittedly, I have to wonder where all these child attendants are. If it were in like a child care facility where people drop their kids off in the morning before they pick them up and after work, I could understand it, but this is an odd position. It is an odd situation. Even so, I think a child attendant is, I mean, opposing counsel presented the counterexample of a lawyer who might sometimes have to lift a heavy box or stand for more than two hours despite being a sedentary job. Certainly, I've lifted heavy files in my time and at the same time, that wasn't an essential part of being a lawyer. I think the better comparison here is Did you say was or was not an essential part of being a lawyer? I think it's not an essential part of being a lawyer. The essential job of a lawyer is making an argument. As your honors are likely aware, there's a judge on this circuit. Sometimes you have to pick up a box or sometimes you have to, right? That's what we're trying to get at with Gutierrez, which is I'm so glad you went straight to that case because I think that's But one also has to assume that these children will be left in theaters and I've never seen one either. But it's not the first time the DOT has required that we suspend reality, right? This is always... Could you just back up a notch? Sure. Because the first part of the problem is I think that we're all three having as we've never seen a child. Look, this doesn't happen. Right. Okay. So then we go to Gutierrez and it reminds us we're looking at professions, not occupations, not individual jobs. Right. So does that mean there are different jobs that have this, like childcare workers, like people in... Or is that a different category? I mean, I think there's probably a broad range of specific job situations that are described by this one DOT title. So are we supposed to imagine... Because then when you get to Gutierrez to figure out whether this is expected, then I find myself thinking about the person, as Judge Thomas said, who works in a preschool or something. Is that a correct way to think of this? I think a preschool is different in that I think there's a different DOT title that covers preschool. I do think we're obligated to imagine the different work situations, but... But how do we do that? If you could go to Judge Berzon's point, how do we do that when we can't imagine anyone doing this job? I don't mean to be flip. No, I completely... I get what you're saying. I think we have to go back first to the DOT description of the job and just sort of in our minds, hypothecate that this job exists still. All right. But I was going to say something. If this job exists, presumably these children are not three years old. One assumes. One assumes they're nine or 10 years old and no one's lifting them up anyway. Well, I think the better comparison is here is not to a lawyer who might need to pick up a box of files, but that's not the lawyer... That's not why you hire the lawyers to pick up boxes. I think this is more like a lifeguard. Anytime someone is attending over children, they're there for the emergency situation. Are we supposed to imagine someone in a theater? So then they are old enough to be in a theater. They're not toddlers, I think. Sure. But I mean, it doesn't say... It says child. It doesn't really tell us what age of child. Also, if somebody's in a theater, there are other people in the theater, right? And if this person... Sure. If a child has an emergency, this is not the only person available to pick up the child. But these are unattended children according to the DOT definition. Right. That's true. And so their guardian isn't there. If there's an emergency... If I've left my children in someone's care, I don't want just anyone picking up my child. I want the person whose job it is to pick up my child. I have a different question, a more conceptual one. Is your ultimate position that the problem here is that the conflict with the DOT was not discussed? Is that the problem? Exactly. All right. All those cases run in the other direction, don't they? In other words, there are situations in which the DOT requirements are more stringent than what the vocational expert says. Isn't that generally the case? The vocational experts... I think that is the case that comes up the most often. Is there any case in which the problem is that the DOT says it's the light work, but the vocational expert says, oh, but there's some instances in which you might have to do something more stringent, and then you can disregard the DOT category? In other words, your position is that even though the DOT doesn't recognize this exception, nonetheless there was a conflict? Is that what you're saying? Yeah. I believe a conflict can go in either direction. Is there any case like that? I'm unaware of any case like that, perhaps simply because in those cases, we wouldn't be appealing. Counselor, I think the problem I'm having is trying to reconcile cases like Gutierrez where, as I understand it, the limitation was the ability to lift in a cashier's job overhead. We found that that just didn't occur often enough in the role of a cashier to prevent the person from carrying out the duties. As I understand the testimony here, the response by the VE was that it was such a rare occurrence that the child attendant would have to lift more than 20 pounds. That seems to me to fall comfortably within the realm of Gutierrez and that line of cases. I think the distinction is that although it's a rare circumstance in this case, it's an essential duty of the child attendant in the circumstance where it occurs. How can it be essential if it's rare? I guess that's what I'm struggling with. Well, I would give the example of a lifeguard. Every lifeguard has to be able to do CPR. We hope they never have to. But if you can't do CPR, you can't be a lifeguard. But if it's okay for lawyers who have sedentary jobs to occasionally have to lift heavy boxes of briefs and records, that's not an essential part of the job. Well, no. I just am having a hard time following your logic. It's different for a lawyer because if you have a lawyer who literally can't lift a box, they could still be a lawyer. Someone else could lift the box for them. There's a judge on the Ninth Circuit who practices from a wheelchair. But someone whose job is to attend over children, they need to be able to act when the children need assistance. If there's a child that needs picking up, the child attendant needs to be able to do that or they can't do the job. This is why I'm going back to the question of whether this is a conflict problem. Suppose the DOJ had said, well, the DOG says that this is a light job and you're saying otherwise. Explain it. What would the explanation have been? The explanation would have been, well, I still think it's a light job because this is so rare. Right? I mean, that's essentially what he said. So what explanation would have mattered? What could he have said that would have made it different than what he did say? Well, I think he did explain that it's a rare circumstance, but that it does occur. That's what he said. It's a rare circumstance. Isn't that an explanation? The judge didn't rely on that explanation that I can see. He didn't discuss the conflict at all in the decision. So the problem isn't that there wasn't an explanation, it's that the judge didn't discuss it. That's the problem. And the judge needs to resolve the apparent conflict on the record. Did you want to reserve some time? You're down to about a minute. I do want to reserve a little bit of time. Okay. Thank you. Let's hear from opposing counsel, please. Good morning, Your Honors. May it please the Court. Sarah Moehm on behalf of the Commissioner of the Social Security Administration. Appellant's argument that the vocational expert's testimony constituted a conflict with the or DOT requiring resolution is precluded by this Court's precedent in Gutierrez. In Gutierrez, this Court held that an ALJ does not need to ask a vocational expert follow-up questions. That is, there is no conflict where the frequency or necessity of a task is unlikely and unforeseeable. Wait a minute. Justice. So Gutierrez, yes, it says that. So this boils down to, is it expected? And as Judge Talman said, the problem is here it says it's rare. What do we do with that? That sounds to me like it's expected, but it's not going to happen very often. What do we do with that? Well, I would say that, so we acknowledge that it's rare. It's not likely to happen. So under Gutierrez, we meet the category where the frequency is unlikely. So in that case, that renders the conflict not there. But the second issue as to whether or not it's required is an issue... Conflict not there, meaning there's nothing that needs to be reconciled? Is that your argument? That's right. That's right. That there is no conflict. Does it matter if it's an essential for opposing counsel's argument that it's a safety issue? So when you need to do it, it's really important. This isn't equivalent to picking up a box if you're a lawyer. This is when the time comes, it's really important. So what about that? Sure. So the question is, is it an essential, integral, and expected part of the job? And opposing counsel analyzed, or analogized rather, to a lifeguard. Well, a lifeguard's very task is guarding the life of people who are swimming. But there is no corollary indication that the task of a child attendant is to care for the physical well-being and to respond to emergencies of children who are in a theater. As Judge Berzon and Judge Christin noted, these are children that may be nine or ten years old. They're in a theater, they're watching a show or a performance, and at the end of the performance, the child attendant reminds the children to go home. So the description of the job duty in the DOT is that the child attendant monitors the children, watches them, helps them to retrieve items that are lost, and helps them to remember to go home at the end of a performance. There's no indication in the DOT that the child attendant is physically caring for or carrying children or responding to emergencies by providing health care. Could I ask a more basic question about the DOT? And that is, I think we all share that we're perplexed because we have never seen a child attendant in a theater. So am I thinking about that incorrectly? Should we be sort of imagining this person in different settings where children are attended? Sure. The description of the job in the DOT makes fairly clear that this is occurring in a theater. The first line is, monitors behavior of unaccompanied children in children's section of theater to maintain order. And the description of the job doesn't identify any other locations in which it might occur. That's the problem. That's the problem. We've never seen that exist unless we're talking about, so let me just, I won't spend a lot of time on this, but you know, I can imagine seeing, and I have seen sort of, someone doing that in a planetarium, you know, on a school field trip. I mean, that kind of, or in a, I guess I've seen it also in an aquarium where kids were there for, it was kids only kind of thing, you know, field trip time. Is it fair for me to be thinking of it in that way, or do I need to really stick to this DOT? And here's why it matters, here's why it matters for me, if this helps you. I'm trying to figure out if there are adults there too, right? To Judge Berzon's point, if it's a theater theater, you know, a movie theater or a theater on a stage, it's hard for me to think of a time where there wouldn't be other adults there too, hence other people able to pick up the child. So hopefully that rambling, hopefully there's a question in there you can respond to. Well, there is. I'm really struggling with this. Go ahead. Yeah. I would say that theater is undefined. It's possible you could conceive of a theater and a planetarium or a theater and aquarium. I mean, theater isn't a discrete defined term in the DOT. So it's possible that the theater as anticipated by the DOT occurs in different scenarios in which there are other adults present in other locations in the theater. And I think when you look at the definition of the DOT, there is an indication that there would be non-child sections of the theater because the DOT description indicates that the child attendant notes when a child enters the section, presumably the children's section of the theater. So I think your supposition that there may be other adults in the area is proper. And that lends to the conclusion that a child attendant might not need to pick up a child, that the DOT description doesn't require it. Can I ask a question? Yes. The same question I asked before. Is this really a conflict problem at all? I mean, the problem is that, I mean, is it of the kind that Guterres and the other cases cover? Because in all the other cases, as far as I can tell, what happened was the vocational expert testified to the absence of restrictions that were in the DOT description. So they said, well, even though the DOT says it's light work and there's something that he can't do that is light work, that doesn't matter. And that's what the conflict was. And that's not what's going on here. The problem is that if there's a problem, it's the ALJ simply didn't deal with this testimony about the fact that she'd have to pick up a child. But I don't know what the conflict of DOT has to do with it, or that it has anything to do with it. I agree. And there's a very important distinction here between this case and Guterres. And Guterres, the question was whether... Not just Guterres, but all of the other cases, as far as I can tell. Yes. And Lemire and other cases. Whether the limitations of the RFC were consistent with the requirements of the DOT. And here the question is, that appellant raises is, did the DOT appropriately categorize the job in the first instance? And underlying basis of that argument is that the job might have to be classified as heavy as heavy or very heavy, which is the highest exertional category in the DOT if there is a child who weighs between 50 or above 100 pounds who might fall and need to be picked up. Is that why the VE didn't cite the separate DOT title for child care attendant in like a preschool or something? That may well be. Which I have a much easier time imagining than a child attendant in a theater, which to my knowledge I've never seen. Yeah. That may well be the case because those jobs would require lifting children, regularly young children who would weigh more than 20 pounds. Okay. And I would expect that the DOT description of that job would indicate as such, or at least the exertional categorization of the job by the DOT. Is the DOT, is that something that's prepared by the Department of Labor based on job statistics from around the country? It is prepared by the Department of Labor based upon job analyzation. And there are how many, 25,000 of these positions around the country? I think that's accurate. That's what the vocational expert testified to, yes. Okay. And when you... And that is not in the DOT, right? The number of jobs... You have the job numbers? That's right. The job numbers are not in the DOT. The vocational expert testified... Do you think what should have happened here is somebody should have asked where are these 25,000 jobs since none of us has ever seen one? Yeah. Where does that come from? Well, that number comes from the vocational expert. But there was no questioning of the vocational expert about how he reached those job numbers. No, I understand that. I'm just trying for my own edification. I'm trying to understand, you know, why out of all of the jobs in the world, the VE picked child attendant in a theater out of the DOT as the type of work that the claimant could do with the RFC limitations articulated by the ALJ? I would be reluctant to hazard a guess as to why the vocational expert chose that job, except that it is consistent with the limitations of the RFC. The same with the second job that the ALJ relied upon at step five. The second job is called bakery worker, but looking it up, it seemed to be cutting cherries or something. Yes, I see that. I suspect there may have been a scrivener's error. A colleague alerted me to that fact just Friday, where the last two digits may have been interposed with another job, which is also consistent with the DOT. But in any event, that also hasn't been challenged. I agree. I understand. But I mean, I envision a bakery worker to be carrying trays of loaves of freshly baked bread or pastries, which it seems to me would involve a lot of lifting. I think the starting point towards any analysis of whether a job is consistent, whether a vocational expert's testimony is consistent with the DOT is the DOT and what the DOT categorization requirements are. And in this case, the job number relied upon is consistent with the limitations of the RFC. Okay. Unless there are any further questions. It doesn't seem that there are. Thank you. Thank you. I request the court affirms. Thank you for your argument. Madam Clerk, could you put two minutes on the clock, please? Thank you, Your Honor. You bet. I did want to briefly address that the DOT is not currently maintained. It hasn't been updated since 1991. I'm sorry. I can't hear that. Say it again, please. The Dictionary of Occupational Titles is 30 years out of date. It hasn't been updated since 1991. So that might be part of the reason why there are jobs in there that we're looking at now. In 1991, there were no such people either that anybody ever saw. But go ahead. Unless you had children then. Yeah. But your point is well taken. Go ahead. No. Go ahead. Oh, no. Please. I did want to touch briefly on the issue of the number of jobs remaining. Assuming the court agrees that there's a problem with this child attendant job, the remaining occupation of bakery worker, vocational expert testified that there were 14,900 such individuals. So I don't understand that either in the other direction. There must be many, many more than 14,000 bakery workers in the United States. Well, a bakery line worker in particular is not necessarily a baker. It's just somebody who is monitoring products that are coming down the conveyor belt, if I understand it. Well, even then, even looking at Google, I mean, there are hundreds of thousands of them. Yeah. I would have expected the numbers to be reversed, that there were 14,000 child attendants and 25,000 bakery workers. Our problem is we have a different day job. The testimony of the vocational expert as to the numbers is not in dispute by either party. Right. And then the question is whether 14,900 is a significant number of jobs. Where does the vocational expert get those numbers from? I would have had to ask him that at the time. I wasn't the attorney on this case. There's a software program that is at issue in another case a little later this week that provides those job numbers that these apparently use. I believe, yes, I do have a job. But for today, you're down to less than a minute. Could you tell us in just a few sentences, what's your strongest argument here? On behalf of your client, that there was a conflict. My key point here is that it may be rare that a child attendant needs to lift a child, but when they have to, they have to. And if they can't, then they can't do the job. But if it's rare and that doesn't, and we've said in our case law, that that doesn't mean it was inappropriate to pick that title, I don't see how you win under Mass Effect. I think a requirement that is rare can nevertheless be essential and expected. Okay. Thank you for your argument. Thank you both very much for your argument. We'll take that case under advisement and move on to the next case on the calendar.
judges: BERZON, TALLMAN, CHRISTEN